**HEMENWAY FURNITURE CO., Limited, v. JUNEAU et al. \***

No. 4297.

Court of Appeal of Louisiana. Second Circuit.

June 15, 1932.

John R. Hunter, of Alexandria, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

DREW, J.

Plaintiff, a retail dealer in furniture in the city of Alexandria, La., sold on open account certain furniture and household goods to M. M. Juneau, amounting to $837.15, on which account Juneau paid the sum of $497, leaving a balance due of $340.15.

During the month of October, 1930, Juneau's house was destroyed by fire, and the furniture purchased from plaintiff and located therein was totally destroyed. The furniture was insured by Juneau with the Great States Insurance Company, of Dallas, Tex., for the sum of $700.

Plaintiff, after having an unsatisfactory talk with Juneau, in order to protect itself, took advantage of Act No. 263 of 1916, and gave notice to the insurance company of its vendor's lien and privilege on the furniture destroyed by fire. The insurance company did not serve Juneau with notice, after receiving notice from plaintiff, as is required of it by Act No. 263 of 1916. After some delay, the insurance company and Juneau agreed to a settlement of $540, from which amount the insurance company deducted $70, the amount of a chattel mortgage in favor of plaintiff, and sent to its agent in Alexandria, Mr. S. C. Spengler, a check for $470.

The check was made payable to M. M. Juneau. Plaintiff had served upon Mr. Spengler a similar notice to the one sent the insurance company; therefore, Spengler did not immediately turn over to Juneau the check. While the check was still in Spengler's hands, he received by wire from the insurance company authorization to add, as payee, in the check the name of plaintiff, which he did.

The check, with the payee reading, "M. M. Juneau and the Hemenway Furniture Company, Limited," was then given to Juneau. Realizing that he could not cash the check without the indorsement of plaintiff, Juneau was dissatisfied and sought the advice of a lawyer. He first consulted Mr. Shevnin, who, after making an investigation, could give him no relief. He then consulted Mr. Novo, another member of the Alexandria bar. The only testimony in the record as to what transpired between Juneau and Mr. Novo is the testimony of Novo, as follows:

"Q. Well, state the facts. A. Mr. Juneau came into my office, presented me a check, which check is the one in the record, presented me a letter from McBride, Bourne & Kennedy, which letter is also in the record, told me that the claim or purported claim of the Hemenway Furniture Company was unjust and that the check had originally come to Alexandria without the name of the Hemenway Furniture Company, and that he wanted his money, and that if he owed anything, he owed the Hemenway Furniture Company on open account, and not anything with regards to this check, or conversations along those lines. He told me he had discussed the matter with Mr. Shevnin, that Mr. Shevnin said that they could not cash the check, and I told him that Mr. Shevnin's conversation was right, that he could not cash the check, but that I could see no harm in sending the check back to the company with the letter, explaining the full details of the transaction and telling the company that I had not taken up the matter with their local agent. I was under the impression, according to the letter from McBride, Bourne & Kennedy, that the Hemenway Furniture Company had been taken care of or been paid, when Mr. Juneau said that the account against the Hemenway Furniture Company was not just; and, I told Mr. Juneau that I would do this, and he asked me to then go through with that proposition.

"Q. What did he ask you to do? A. He asked me to—whether or not he could cash this check, and I told him 'No', but that we could send it back to the company who had issued the check and if they thought the check should be paid, they would pay it, and if they didn't, they wouldn't pay it.

"Q. Is that the reason you erased the name of the Hemenway Furniture Company? A. Yes, sir.

"Q. Then you forwarded the draft and wrote the letter in this evidence here, attached it to the draft and sent it to the company? A. Yes, sir."

The letter written by Novo and attached to the draft is as follows:

"December 17, 1930.
"Great States Insurance Co.,
"Dallas, Texas.
"Dear Sirs:

"I am herewith handing you for collection check drawn on you by your adjusters in the full sum of Four Hundred and Seventy and 38/100 ($470.38) Dollars.

"I am also handing you final letter from the adjusters showing that this was the final amount agreed on in the adjustment.

"Your local agents, S. C. Spengler Insurance Agency, has tried to act in the capacity of a collecting agency for one of our local firms, the Hemenway Furniture Company of Alexandria, by adding to the check sent my

client the name of the Hemenway Furniture Company, as one of the payees. If my client owes this furniture company any money it is on open acount, and your agent has no right to try to act in the capacity of a collecting agency or a judiciary department.

"I have not taken this matter up with Mr. Spengler, your agent here, but I am forwarding you the check for payment, together with the policy and the letter above referred to from your adjusters.

"I, myself, crossed off the name of the Hemenway Furniture Company from the face of the check by running pen marks through the same, as the adding of this firm's name to the check is an alteration, *which was not authorized by you or your adjusters, I am sure.*

"Please wire me when this draft is paid, as the sixty (60) days for adjustment is past.

"Waiting for your pleasure in the matter, I am,

"Yours truly,
"[Signed]   Lee J. Novo."

The letter from McBride, Bourne & Kennedy, insurance adjusters, which is referred to in Novo's testimony, is as follows:

"McBride, Bourne & Kennedy
"Incorporated
"Insurance Adjusters
"814–15 Maritime Building,

"New Orleans, Nov. 22, 1930.
"Mr. Milton Juneau,
"Alexandria, La.
"Dear Sir:   Re: Claim—Great States Policy No. 201859.

"We wrote you sometime since advising you that we had received a letter from the Hemenway Furniture Company stating that a part of your property on which an allowance was made was covered by a chattel mortgage.

"This is an absolute violation of the policy contract.

"However, the amount being small, $70.00, we have deducted that amount from the amount agreed on, $540.38, leaving $470.38.

"We are handing you herewith proof of loss for that amount, and ask that you kindly acknowledge before a Notary Public and return to us.

"Very truly yours,
"McBride, Bourne & Kennedy, Inc.,
"[Signed]   J. Jos. Kennedy.
"JJK:P
"cc Spengler
"Ins. Agency, Inc."

Mr. Novo, on cross-examination, testified in part as follows:

"Q. And you wrote the insurance company as you did and you meant to convey them the impression that Hemenway Furniture Company had no business in that loss draft and that Juneau alone should be made payee? A. No, I did not. I meant to convey the impression that if they had any claims and they had been furnished to the company, the insurance would not pay the claim and if Spengler, on the contrary, acted in violation of the laws, it would have been an unjust act with regards to Juneau."

The following excerpt from the testimony of Mr. R. S. Graham, of the insurance company, shows clearly the intention of the insurance company:

"Q. Are you in a position to testify with regards to any conspiracy or fraud against the Hemenway Furniture Company, which conspiracy or fraud was an effort to deny the Hemenway Furniture Company of substantial legal rights, or of their vendor's lien and privilege, or of any moneys due them, if any were due them? A. I am in a position to know that no fraud was intended in any manner whatever against the Hemenway Furniture Company.

"Q. Did you receive along with the draft presented to you for payment by the Guaranty Bank & Trust Company of Alexandria, Louisiana, through its agencies, the original copy of a letter from McBride, Bourne & Kennedy of New Orleans, Louisiana, addressed to M. M. Juneau, the insured? A. Yes, we received a letter from McBride, Bourne & Kennedy of New Orleans, addressed to M. M. Juneau of Alexandria, Louisiana, to the effect that they, the adjusters, had received a letter from the Hemenway Furniture Company, after the loss stating that a part of the property insured was covered by a chattel mortgage. They further stated that this was in absolute violation of the policy contract, on account of the property being mortgaged without notice to the company. The adjusters further stated that the amount of the indebtedness being small, $70.00, that they had deducted that amount in making settlement of the loss from the agreed amount, $540.38, leaving $470.38 to the assured, M. M. Juneau, and for which amount the draft was issued.

"Q. Did you receive from the Hemenway Furniture Company a release of any claims that they might have had against the policies or moneys due thereunder? A. We did not.

"Q. Did you or your company furnish to the said M. M. Juneau a written notice of the filing of the vendor's claim? A. We did not.

"Q. If you answer yes, please annex to your answer either the original or photostatic copy of same. If your answer is no, why did you fail to comply with that part of the law? A. We did not think it necessary as the policy agreement was violated by the encumbrance with chattel mortgage, without notice to the Great States Insurance Company.

"Q. Do you feel that Mr. Juneau should not have been paid the proceeds of this policy?

386:

If so, why did you pay same? A. We felt that Juneau was entitled to be paid the amount of his loss as he had secured a policy in the Great States Insurance Company to protect him in a contingency of this kind."

The draft which was attached to the Novo letter and the McBride, Bourne & Kennedy letter, when received by the insurance company, was paid, and on the left-hand corner of the draft we find the inscription which is signed by Gross R. Scrugs, Jr., the person who originally drew the draft, and which is as follows:

"O. K. For M. M. Juneau only.

"Erasure is correct."

When the draft was paid, Mr. Novo received for his services a fraction more than 10 per cent. of the amount collected. Mr. Juneau did not pay any part of the money on the debt he owed plaintiff. It is admitted by Novo that he ran a pen mark through the name of the payee in the check, namely, Hemenway Furniture Company, Ltd., before attaching the letter to it, and sent it through the bank to the insurance company for payment.

Plaintiff, having failed to receive out of this check pay for the furniture sold Juneau and destroyed by fire, filed this suit against both Juneau and Novo, praying for judgment in solido for the amount of Juneau's indebtedness, namely, the balance due on the furniture and household goods. Juneau did not contest the suit and there was judgment by default against him, as prayed for. He has not appealed and is not before this court.

Plaintiff's suit is brought under article 2324 of the Revised Civil Code and, after alleging on the facts as above set out, which are undisputed, for a cause of action against Novo, alleged in paragraphs 8 and 11 of his petition as follows:

"8. Petitioner shows that the said Juneau and the said Novo, defendants herein, both of whom had full knowledge of all of the facts, and the said Novo particularly, who had knowledge of the legal situation involved, as well, conspired and colluded together to erase and remove petitioner's name from said check, and who did pursuant to said collusion and conspiracy actually on or about the 3d day of January, 1931, erase, cancel, and/or strike petitioner's name from the check, for the express and deliberate purpose of defrauding your petitioner of his debt, secured as it was by the vendor's lien and privilege; petitioner shows that it is not informed as to just which of the two defendants altered said check by removing its name, but it avers upon information and belief that it was either the one or the other, or perhaps both, but at all events with the full knowledge of both, and at the illegal instigation of the said Novo, and that as a matter of fact, the said act was done as the result of fraud and illegal conspiracy; and scheme, concocted for the purpose of defrauding petitioner of its money."

"11. Petitioner shows that the said Novo has been licensed to practice in the courts of the state of Louisiana, and knows full well the consequences of his acts; that he knew at the time that said check was altered without petitioner's knowledge and consent, that it was a violation of petitioner's rights and violation of the law of the State of Louisiana; that the said Novo was the moving spirit in the changing and alteration of said instrument, and was, in fact, the party who concocted the scheme to defraud petitioner of its rights, and to prevent it from collecting its claim out of the monies upon which it had a lien granted by law; that because of the said Novo's actions, and because of entering into the illegal conspiracy, and because of his execution of the fraudulent scheme with the said Juneau, the said Novo has made himself responsible with the said Juneau, to petitioner for the money which it has been deprived of; that he is responsible in solido with the said Juneau; that the said Juneau is now, and has been at all times, primarily responsible for said indebtedness, and the said Novo, because of illegal and tortious acts as herein set out, has destroyed petitioner's vendor's lien and privilege, is liable in solido with the said Juneau for said amount."

Defendant Novo filed an exception of no cause of action, which was overruled. He then answered, denying all the principal allegations of plaintiff's petition and alleging that, prior to the date of January 3, 1931, the day the draft was sent for collection to the insurance company by Novo, he was informed by the adjuster of the Great States Insurance Company that they had deducted the amount claimed by plaintiff company from the settlement agreed upon with M. M. Juneau, and that he was justified in concluding that the plaintiff company had no right, title, or interest in said check, and in the further conclusion that the addition of the name of plaintiff company to the check, as payee, by the local agent of the insurance company, was unauthorized. He admitted that Juneau received the proceeds of the check, less the small amount as commission he charged for making the collection.

The lower court rendered judgment for plaintiff, as prayed for, and held defendant Novo liable in solido with Juneau. Defendant Novo appealed.

Plaintiff alleged that Novo, as above shown, conspired and colluded with Juneau to erase plaintiff's name from the check for the express purpose of damaging it and defrauding it of its debt and of its rights. The damage alleged is that the acts of Novo, in conjunction with Novo, have destroyed plaintiff's vendor's lien and privilege.

■■ Allegations of a petition for the purpose of trying an exception of no cause of action are taken as true only in so far as it alleges facts. Allegations of conclusions of law which are incorrect, are not taken as true. Therefore, the allegation that plaintiff's vendor's lien and privilege has been destroyed by the alleged acts of Novo and Juneau, by conspiring and colluding together, is an erroneous conclusion of law.

Act No. 263 of 1916 reads as follows:

"Creating, in favor of the vendor of perishable property, a first lien and privilege on funds due or to become due the vendee under policies of insurance covering such property, where such property is destroyed by fire, and where at the time of its destruction there rested against such property a vendor's lien and privilege, and providing the manner of protecting such lien and privilege; for priority of such lien over seizure of the proceeds of such insurance policies.

"Section 1. Be it enacted by the General Assembly of the State of Louisiana, That where property is destroyed by fire, which, at the time of its destruction, is affected with or covered by a vendor's lien and privilege, the vendor or holder of such privilege shall have and be entitled to enforce a lien and privilege, to the amount of the unpaid purchase price or any portion thereof, on any claim, funds or money due the owner or vendee of such property under policies of insurance covering same. And said lien and privilege shall have the same rank as is now given by law to the vendor's lien and privilege on the thing sold, and shall be superior to any lien and privilege [on the thing sold, and shall be superior to any lien and privilege] growing out of the attachment or garnishment, of seizure or such claim, funds or money.

"Sec. 2. Be it further enacted, etc., That in order to protect the lien and privilege provided in Section 1, of this Act, the vendor, his heirs or assigns shall, at any time prior to the payment of the amount due under the policies of insurance covering such property, give written notice to the insurer under such policies of the existence of such claim, and state under oath the amount thereof. On the receipt of such notice the insurer shall give written notice to the assured of the filing of the vendor's claim, and in the event of a dispute between the vendor and his vendee, or of any one claiming adverse interest under oath, the insurer shall deposit, subject to the right of all parties in interest, the amount due under such policies in the registry of the court, having jurisdiction in any suit that may be brought on such policies to recover the amount due thereunder. That having made the deposit of the amount due under the policies in the registry of the court, as hereinabove provided, the insurer shall be relieved of further responsibility.

"Sec. 3. Be it further enacted, etc., That the provisions of this Act and the privilege herein granted shall apply not only to all claims, funds or money that may hereafter become due under policies of fire insurance covering such property, but shall also apply to all claims, funds or moneys now due under such policies and, which for any reason remains unpaid at the time this Act becomes a law.

"Sec. 4. Be it further enacted, etc., That this Act shall take effect from and after its passage, and all acts or parts of acts in conflict with this Act be and the same are hereby repealed."

Plaintiff has complied with this statute and protected its lien and privilege. There is nothing Novo did or could have done that would have destroyed plaintiff's vendor's lien and privilege on the funds in the hands of the insurance company. The act provides in specific language what the insurance company should have done in order to have relieved itself. The record discloses it did not follow the provisions of the act. Plaintiff's privilege and lien have not been destroyed. Therefore, it has failed to allege whereby it has been damaged. It does pray for damages for delay in getting its money. It contends that it has been defrauded out of its debt, and that its rights, lien, and privilege have been destroyed; its contention is erroneous under the law. It has the same rights, lien, and privilege that it had before Novo and Juneau took any action. It has alleged no damage and the exception should have been sustained. However, due to the fact that plaintiff's petition makes a serious charge against a member of the bar of this state, we prefer to decide the case on the merits.

■ The facts, as above outlined, and over which there is no dispute, we think, clearly exonerates Mr. Novo of any wrongdoing. It is urged that upon investigation he could have found out that Mr. Spengler was authorized to add the name of plaintiff to the check as payee, and that he could have found out that plaintiff had not been taken care of by the insurance company. The mere fact that he failed to make such investigations is not sufficient to brand him as a trickster and a law violater. He acted upon a letter from the insurance adjusters and the word of his client, and it must be remembered that Juneau had never been notified by the insurance company that plaintiff was claiming a vendor's lien and privilege on the insurance money due him, as is required by the act, creating a lien and privilege.

Furthermore, Mr. Novo did not alter the check or draft and present it to the bank for immediate collection, but, acting on information he was justified in acting upon, scratched out the name of the plaintiff on the draft, attached the draft to a letter fully explana-

tory of his position, together with a letter from the insurance company's adjusters, and left it up to the insurance company to pay the draft or to refuse to pay it and deposit it in the court, as directed by law in such cases where there is a dispute between the insurer and a creditor claiming a lien and privilege, under Act No. 263 of 1916. It possibly would have been better form not to have altered the check by scratching the name of plaintiff, and to have returned the draft, with the letter directed to the insurance company, and requested it to issue a draft to Juneau, without making the plaintiff the payee. The result would have been the same, under the testimony of Mr. Graham of the insurance company, and the notation made on the draft by Mr. Scrugs, the original drawer of the draft, and there can be no doubt that a draft payable to Juneau alone would have been forwarded to him.

The evidence clearly shows that plaintiff has not been damaged by any acts of Novo, and the record is barren of any proof of conspiracy or fraud on his part. He might be held guilty of laches in not making an investigation, but in his letter to the insurance company, he informed them that he had not investigated the matter. The insurance company testified, through Mr. Graham, that they thought the money was due to be paid to Juneau and had paid it. It was not misled by anything said or done by Novo, and, no doubt, acted upon information received from its adjusters. There has been no attempt on the part of Mr. Novo to conceal from the court the facts in this case. He frankly stated what he did and why, and we fail to see why he should be condemned.

The judgment of the lower court is erroneous; and it is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed and the demands of plaintiff rejected, at its costs.